**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
Steven J. Reisman
Michael J. Moscato
Theresa A. Foudy
101 Park Avenue
New York, NY 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

*Counsel to Wilmington Trust,*
  *National Association, as Trustee*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Lead Case No. 14-22503 (RDD) |
| MPM SILICONES, LLC, *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors, | : | |
| | : | |
| | : | |
| WILMINGTON TRUST, NATIONAL | : | |
| ASSOCIATION, IN ITS CAPACITY AS | : | |
| TRUSTEE, | : | |
| Plaintiff, | : | Adv. Proc. No. 14-08248 (RDD) |
| | : | |
| -against- | : | |
| | : | |
| JP MORGAN CHASE BANK, N.A., AS | : | |
| INTERCREDITOR AGENT UNDER THE | : | |
| INTERCREDITOR AGREEMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR REMAND

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTS ...................................................................................................................................... 4

     A.    The 1.5 Lien Lenders and the Intercreditor Agreement ........................................ 4

     B.    The Chapter 11 Cases and the Restructuring Support Agreement ....................... 5

     C.    The First Lien Complaint and the Intercreditor Action ........................................ 6

     D.    The Backstop Commitment Agreement and Indemnification .............................. 7

     E.    Removal of the First Lien Complaint and Intercreditor Action ........................... 8

ARGUMENT .......................................................................................................................... 9

I.    THE APOLLO DEFENDANTS HAVE NOT MET THEIR BURDEN OF
    ESTABLISHING THAT THE COURT HAS SUBJECT MATTER JURISDICTION
    TO HEAR THE INTERCREDITOR ACTION ............................................................ 9

     A.    The Intercreditor Action Does Not "Arise Under" Title 11 ............................... 10

     B.    The Intercreditor Action Does Not "Arise In" a Proceeding Under Title 11 ..... 10

     C.    The Intercreditor Action Does Not "Relate to" a Proceeding Under Title 11 .... 12

           i.    The Intercreditor Action Does Not Impact the Rights, Liabilities,
               Options or Freedom of Action of the Debtors, Nor Does it Impact
               Upon the Handling and Administration of the Chapter 11 Cases ........... 13

           ii.    The BCA Indemnification Cannot Serve as a Basis for "Related to"
               Jurisdiction ............................................................................................ 14

                  a.    The BCA Indemnification Does Not Meet the Standards for
                        "Related to" Jurisdiction in the Second Circuit ......................... 15

                  b.    The Apollo Defendants Cannot Manufacture "Related to"
                        Jurisdiction by Means of the BCA Indemnification .................. 17

II.    28 U.S.C. § 1334(c)(2) REQUIRES THE COURT TO ABSTAIN FROM
    EXERCISING ANY "RELATED TO" JURISDICTION TO THE EXTENT
    SUCH JURISDICTION EXISTS ............................................................................ 21

III.    THE COURT SHOULD EXERCISE PERMISSIVE ABSTENTION AND
        EQUITABLE REMAND..................................................................................................24

CONCLUSION.........................................................................................................................26

19289094

# TABLE OF AUTHORITIES

Page

## Cases

Baker v. Simpson,
    613 F.3d 346 (2d Cir. 2010)................................................................10, 21

Blackacre Bridge Capitol LLC v. Korff (In re River Ctr. Holdings, LLC),
    288 B.R. 59 (Bankr. S.D.N.Y. 2003) ............................................ 16-17

Bond St. Assocs. LTD. v. Ames Dep't Stores, Inc.,
    174 B.R. 28, 32-33 (S.D.N.Y. 1994) .............................................17

Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Constr., Inc.),
    496 B.R. 106 (S.D.N.Y. 2013) ......................................................9

Celotex Corp. v. Edwards,
    514 U.S. 300 (1995)...............................................................2, 12

Enron Corp. v. Citigroup, Inc. (In re Enron Corp.),
    353 B.R. 51 (Bankr. S.D.N.Y. 2006) ............................................14

Exec. Benefits Ins. Agency v. Arkison,
    — U.S. —, 2014 U.S. LEXIS 3993 (U.S. June 9, 2014)...............................23

Feld v. Zale Corp. (In re Zale Corp.),
    62 F.3d 746 (5th Cir. 1995) .................................................. 14, 17-21

Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),
    505 F.3d 237 (3d Cir. 2007)....................................................... 2, 11-12

Glinka v. Fed. Plastics Mfg. (In re Housecraft Indus. USA, Inc.),
    310 F.3d 64 (2d Cir. 2002)........................................................10

Greene v. Nationwide Mut. Ins. Co.,
    2011 U.S. Dist. LEXIS 6514 (N.D. W. Va. Jan. 21, 2011) ...........................17

Hart v. Bello,
    2011 U.S. Dist. LEXIS 45471 (S.D.N.Y. Apr. 27, 2011)........................ 24-25

Healy v. Ratta,
    292 U.S. 263 (1934)........................................................... 9-10, 12

In re Bearing Point, Inc.,
    453 B.R. 486, 488 (Bankr. S.D.N.Y. 2011) ........................................ 25-26

In re Combustion Eng'g, Inc.,
  391 F.3d 190 (3d Cir. 2004)............................................................. 15, 17-18

In re Dreier LLP,
  429 B.R. 112 (Bankr. S.D.N.Y. 2010) ............................................18

In re Exide Techs.,
  544 F.3d 196 (3d Cir. 2008)............................................................22

In re Fairfield Sentry Ltd.,
  458 B.R. 665 (S.D.N.Y. 2011)........................................................21

In re Federal-Mogul Global, Inc.,
  300 F.3d 368 (3d Cir. 2002)............................................................15

In re Genco Shipping & Trading Ltd.,
  2014 Bankr. LEXIS 2854 (Bankr. S.D.N.Y. July 2, 2014) ............18

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
  517 F.3d 52 (2d Cir. 2008), rev'd and remanded on other grounds sub nom.
  Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (U.S. 2009) .......................18

Kokkonen v. Guardian Life Ins. Co. of Am.,
  511 U.S. 375 (1994)..........................................................................9

Linardos v. Fortuna,
  157 F.3d 945 (2d Cir. 1998).............................................................9

Longacre Master Fund, Ltd. v. Telecheck Servs. (In re Casual Male Corp.),
  317 B.R. 472 (Bankr. S.D.N.Y. 2004).............................................24

N.Y. Commercial Bank v. Pullo,
  2013 Bankr. LEXIS 520 (Bankr. S.D.N.Y. Feb. 7, 2013) ........................22, 23

Pacor, Inc. v. Higgins,
  743 F.2d 984 (3d Cir. 1984).............................................2, 12, 14, 15

Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,
  671 F.3d 261 (2d Cir. 2011)......................................................... 22-24

Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.),
  676 F.3d 45 (2d Cir. 2012), cert. denied, 133 S. Ct. 2849 (2013) ................12-13, 15-16

Post Investors LLC v. Gribble,
  2012 U.S. Dist. LEXIS 139783 (S.D.N.Y. Sept. 27, 2012)............................22

Pretka v. Kolter City Plaza II, Inc.,
  608 F.3d 744 (11th Cir. 2010) ........................................................17

19289094

Purdue Pharma L.P. v. Kentucky,
    704 F.3d 208 (2d Cir. 2013)...........................................................................9

Sealink Funding Ltd. v. Bear Stearns & Co.,
    2012 U.S. Dist. LEXIS 145418 (S.D.N.Y. Oct. 9, 2012) ................................13

W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.),
    591 F.3d 164 (3d Cir. 2009)..........................................................................15

Winstar Holdings, LLC v. Blackstone Grp., L.P.,
    2007 U.S. Dist. LEXIS 90482 (S.D.N.Y. Dec. 10, 2007) ........................ 11-12

Wood v. Wood (In re Wood),
    825 F.2d 90 (5th Cir. 1987) ..........................................................................10

## Statutes

28 U.S.C. § 157(c)(1)..........................................................................................23

28 U.S.C. § 1334(b) .............................................................................................9

28 U.S.C. § 1334(c)(1)................................................................................... 24-25

28 U.S.C. § 1334(c)(2)............................................................................ 3, 21-22, 24

28 U.S.C. § 1452(b) ...........................................................................................24

## Miscellaneous

2 Robert L. Haig, Commercial Litig. in N.Y. State Courts (3d ed. 2010)...................23

19289094

Wilmington Trust, National Association ("Wilmington" or the "1.5 Lien Indenture Trustee"), solely in its capacity as trustee[1] pursuant to the Indenture, dated as of May 25, 2012 (the "1.5 Lien Notes Indenture"), pursuant to which $250,000,000 in aggregate principal amount of 10% Senior Secured Notes due 2020 were issued by MPM (as defined herein), files this Memorandum of Law in support of *Plaintiff's Motion for Remand* (the "Motion") of the Intercreditor Action (as defined herein) to the State Court (as defined herein) where it was initially filed.

## PRELIMINARY STATEMENT

1.      This is an action seeking to remedy repeated breaches by a group of junior lenders of an intercreditor agreement entered into well before the commencement of these Chapter 11 Cases.[2]  Not content with violating their contractual obligations to senior lenders, certain of those junior lenders — the Apollo Defendants — now seek to deprive the senior lenders of their chosen forum by removing this action, which asserts solely state-law claims against non-debtor parties, to this Court.  This gambit should be rejected.

2.      Federal courts are courts of limited jurisdiction, which jurisdiction, as instructed by the United States Supreme Court, should be narrowly construed.  This dispute does not fit within the limited confines of 28 U.S.C. § 1334 because it does not "arise under" title 11, nor does it "arise in" or "relate to" a proceeding under title 11.

3.      It is undisputed that the Intercreditor Action does not invoke any rights created under title 11; therefore, it does not "arise under" the Bankruptcy Code.  The Intercreditor Action also does not "arise in" a bankruptcy case, because it is not an action that

---

[1]      Wilmington replaced The Bank of New York Mellon Trust Company, N.A. as trustee on April 16, 2014.

[2]      Defined terms used in this Preliminary Statement but not otherwise defined shall have the meanings ascribed to them below.

"by [its] nature, not [its] particular factual circumstance, could only arise in the context of a bankruptcy case." Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 260 (3d Cir. 2007) (citations omitted). Even the Apollo Defendants admit that disputes over intercreditor agreements can and often do arise outside of bankruptcy. As a result, they are reduced to arguing that "arising in" jurisdiction exists because this dispute ripened after a bankruptcy filing. But that is beside the point — this dispute could just as easily have arisen in other contexts, for example, in an out-of-court restructuring. The caselaw is clear: the mere happenstance of a bankruptcy filing is not sufficient to create "arising in" jurisdiction.

4.     The Apollo Defendants' arguments concerning "related to" jurisdiction fare no better. The Intercreditor Action is not "related to" the Chapter 11 Cases, because it does not "alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively)," nor does it "impact[] upon the handling and administration of the bankrupt estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). The Second Circuit has interpreted the Celotex standard to require a "conceivable effect" upon the Debtors or their Chapter 11 Cases. The Apollo Defendants cannot meet this standard.

5.     The Intercreditor Action seeks compensatory damages, from non-debtors, and declarations that the junior lenders breached their contractual obligations under state law to the senior lenders. None of the relief requested in the Intercreditor Action affects what the Debtors can or cannot do in these Chapter 11 Cases. None of the relief requested affects this Court's administration of the Chapter 11 Cases or how property is distributed pursuant to the Proposed Plan. And notwithstanding the Apollo Defendants' contention that there is some "overlap" between the issues underlying the Intercreditor Action and the Chapter 11 Cases,

"overlap" is not a basis for this Court's jurisdiction. Instead, the correct legal standard is whether the action will have a "conceivable effect" on the Debtors' or their Chapter 11 Cases, which it does not. Therefore, the Court lacks "related to" subject matter jurisdiction over the Intercreditor Action.

6. Faced with the fact that the Intercreditor Action does not otherwise "relate to" the Chapter 11 Cases, the junior lenders have sought to manufacture federal jurisdiction by obtaining an indemnification from the Debtors with respect to a similar suit by another group of senior lenders three days after that lawsuit was filed against the junior lenders. That indemnification, however, does not meet the Second Circuit's "conceivable effect" standard for two distinct reasons. *First*, because it is a *contingent* obligation that would necessitate two actions — an action by the senior lenders against the junior lenders in the Intercreditor Action, and a subsequent claim by the junior lenders against the Debtors based on whatever indemnification obligations they contend to be owed. *Second*, the contrived postpetition indemnification cannot serve as a basis for federal jurisdiction because a party cannot, by postpetition agreement, create bankruptcy court jurisdiction where none would otherwise exist.

7. For all of these reasons, this Court lacks federal subject matter jurisdiction pursuant to 28 U.S.C. § 1334 over the Intercreditor Action. Moreover, even if arguendo this Court were to conclude it had "related to" jurisdiction over the Intercreditor Action, 28 U.S.C. § 1334(c)(2) requires the Court to abstain from hearing the dispute because it meets all of the elements of mandatory abstention. Specifically, in addition to meeting all of the other requirements of 28 U.S.C. § 1334(c)(2), the Intercreditor Action can be "timely adjudicated" in the Commercial Division of New York County Supreme Court, because that forum, a specialized court that handles exactly these types of disputes, offers the most direct route for a final

adjudication of the Intercreditor Action on the merits, and adjudication there will not affect the administration of the Chapter 11 Cases.

8.     Finally, if this Court concludes that it has subject matter jurisdiction, the interests of justice, comity and equity nevertheless strongly favor that this Court exercise its discretion to abstain and remand the case to the State Court.  Among other reasons, resolution of the Intercreditor Action in the State Court — a forum that indisputably has jurisdiction to hear the matter — provides the most direct path for a final adjudication on the merits.

## FACTS

### A.     The 1.5 Lien Lenders and the Intercreditor Agreement

9.     Prior to April 13, 2014, Momentive Performance Materials Inc. and certain of its affiliates (collectively, "MPM") issued various debt instruments in order to borrow money on a secured basis from two categories of lenders:  senior lenders and junior lenders.

10.     The junior lenders (the "Second-Priority Secured Parties") extended credit to MPM through a bond offering.

11.     The senior lenders (the "Senior Lenders") extended money through a cash flow lending facility and in connection with two separate bond offerings:  the First Lien Notes Indenture[3] and the 1.5 Lien Notes Indenture.  The 1.5 Lien Indenture Trustee is the successor trustee for the 1.5 Lien Notes Indenture and is the agent for the lenders thereunder (the "1.5 Lien Lenders").

12.     The Second-Priority Secured Parties and the Senior Lenders, including the 1.5 Lien Lenders, have liens on certain collateral of MPM (the "Common Collateral") and the

---

[3]     The "First Lien Notes Indenture" refers to that certain Indenture, dated as of October 25, 2012, as supplemented by the Supplemental Indenture, dated as of November 16, 2012 (as further amended, restated, supplemented or otherwise modified from time to time), pursuant to which $1,100,000,000 in aggregate principal amount of 8.875% First Priority Senior Secured Notes due 2020 were issued by MPM and guaranteed by the Debtors (as defined herein).

proceeds of Common Collateral.  The liens of the Senior Lenders have priority over the liens of the Second-Priority Secured Parties.

13.     In connection with MPM's borrowings, the Senior Lenders and Second-Priority Secured Parties, through their agents, among others, entered into an intercreditor agreement, dated as of November 16, 2012 (the "Intercreditor Agreement").[4]  The Intercreditor Agreement sets forth the rights and liabilities of the Senior Lenders and the Second-Priority Secured Parties vis-à-vis each other with respect to the Common Collateral.

14.     In particular, pursuant to the Intercreditor Agreement, the Second-Priority Secured Parties or their agent are not entitled to Common Collateral or the proceeds of Common Collateral until the Senior Lenders have been paid in full in cash, and the Second-Priority Secured Parties may not interfere with the Senior Lenders' efforts to be repaid.  See Intercreditor Agreement §§ 2-4.

**B.     The Chapter 11 Cases and the Restructuring Support Agreement**

15.     On April 13, 2014, MPM and certain of its affiliates (collectively, the "Debtors") voluntarily filed petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (this "Court").  The Debtors' cases are being jointly administered as In re MPM Silicones, LLC, No. 14-22503 (RDD) (Bankr. S.D.N.Y.) (the "Chapter 11 Cases").

---

[4]     A copy of the Intercreditor Agreement is annexed as Exhibit 1 to the *Declaration of Geoffrey J. Lewis in Support of Objection of Wilmington Trust, National Association, as Indenture Trustee, to Confirmation of Debtors' Proposed Joint Chapter 11 Plan of Reorganization*, filed on July 28, 2014 [No. 14-22503, ECF No. 731] ("Lewis Decl.").

16.     Also on April 13, 2014, certain of the Second-Priority Secured Parties (the "RSA Parties") entered into a restructuring support agreement (the "RSA") with the Debtors. The RSA was assumed by the Debtors on June 23, 2014 [ECF No. 507].[5]

**C.     The First Lien Complaint and the Intercreditor Action**

17.     On June 18, 2014, BOKF, NA, in its capacity as the successor first lien trustee (the "First Lien Indenture Trustee") under the First Lien Notes Indenture, filed a complaint in the Supreme Court of the State of New York, County of New York (the "State Court") against (1) JPMorgan Chase Bank, N.A. as intercreditor agent under the Intercreditor Agreement (the "Intercreditor Agent"), (2) Wilmington Savings Fund Society, FSB, in its capacity as successor trustee under the indenture, dated as of November 5, 2010 (the "Second Lien Indenture Trustee"), (3) Apollo Global Management L.L.C. ("Apollo") and the other Second-Priority Secured Parties that are also RSA Parties (the "RSA Defendants"), and (4) Fortress Credit Advisors LLC, D.E. Shaw Galvanic Portfolios, L.L.C., and other Second-Priority Secured Parties that are not RSA Parties (the "Non-RSA Defendants," and together with the Intercreditor Agent, the Second Lien Indenture Trustee, and the RSA Defendants, the "State Court Defendants").  See *Complaint*, BOKF, NA v. JPMorgan Chase Bank, N.A., Index No. 651861/2014 (N.Y. Sup. Ct. June 18, 2014) [ECF No. 742, Ex. 3] (as amended, the "First Lien Complaint").[6]  None of the State Court Defendants are debtors in any bankruptcy proceedings currently pending in any district.

18.     On June 23, 2014, the Debtors filed their *Joint Chapter 11 Plan of Reorganization for Momentive Performance Materials Inc. and its Affiliated Debtors* [ECF

---

[5]     It is not clear which of the Second-Priority Secured Parties are party to the RSA because the signature pages to the RSA have been redacted.

[6]     On July 2, 2014, the First Lien Indenture Trustee filed an amended First Lien Complaint.

No. 515] (the "Proposed Plan").  The Proposed Plan seeks to pay the RSA Parties in accordance with the RSA.

19.  On July 16, 2014, Wilmington, solely in its capacity as 1.5 Lien Indenture Trustee, also filed a complaint in the State Court against the State Court Defendants.  See Complaint, Wilmington Trust, National Association v. JPMorgan Chase Bank, N.A., Index No. 652181/2014 (N.Y. Sup. Ct. July 16, 2014) (Lewis Decl. at Ex. 2) (the "Intercreditor Action").

20.  The Intercreditor Action (like the First Lien Complaint) alleges that the RSA Parties have taken numerous steps in violation of their obligations under the Intercreditor Agreement.  The Intercreditor Action seeks compensatory damages for breach of contract under New York law, as well as declarations that, to the extent any State Court Defendant holds Common Collateral or the proceeds of Common Collateral before the Senior Lenders are paid in full in cash, such property must be turned over to the 1.5 Lien Indenture Trustee, as agent for the 1.5 Lien Lenders, or held in trust for the benefit of the 1.5 Lien Indenture Trustee, as agent for the 1.5 Lien Lenders.  All of the claims underlying the Intercreditor Action are common-law causes of action pursuant to New York law, and can be adjudicated after distributions are made in the Chapter 11 Cases without affecting whether the Proposed Plan is confirmed.

D.  **The Backstop Commitment Agreement and Indemnification**

21.  On May 9, 2014, the Debtors entered into a Backstop Commitment Agreement (the "BCA") with parties that include certain of the Second-Priority Secured Parties that are party to the RSA (the "BCA Parties").  The BCA contains provisions requiring the Debtors to indemnify and pay certain contributions and reimbursements to the BCA Parties for certain losses, claims, damages, liabilities, costs and expenses arising out of or in connection

with the BCA and the Proposed Plan (the "BCA Indemnification").  See BCA § 8.1.  The BCA

Indemnification is subject to carve-outs for bad faith, willful misconduct or gross negligence on

the part of the BCA Parties.  Id.  The BCA contains procedures for submitting a claim for

indemnification.  See id. § 8.2.

22.     On June 21, 2014, three days after the First Lien Trustee filed the First

Lien Complaint in the State Court, and apparently for no new consideration, the Debtors and the

BCA Parties amended the BCA to provide that the BCA Indemnification will extend to any

"Losses" that any BCA Party incurs in connection with "the RSA, the Chapter 11 Proceedings,

the Intercreditor Litigation [defined as the First Lien Complaint] or any other similar claims,

including any arising under or in connection with, or otherwise related to, the Second Lien

Intercreditor Agreement and any related litigation."  See Notice of Filing of First Amendment to

Backstop Commitment Agreement [ECF No. 505] § 8.1.

## E.       Removal of the First Lien Complaint and Intercreditor Action

23.     On July 8, 2014,  two defendants to the First Lien Complaint — Apollo

and Euro VI (BC) S.a.r.l. (together, the "Apollo Defendants") — filed a notice removing the

First Lien Complaint from the State Court to the United States District Court for the Southern

District of New York, which automatically referred the action to this Court.  See Notice of

Removal, BOKF, NA v. JPMorgan Chase Bank, N.A., No. 14-cv-5086 (S.D.N.Y. July 8, 2014)

(the "Removed First Lien Complaint").[7]  On July 22, 2014, the First Lien Indenture Trustee filed

Plaintiff's Motion for Remand and Memorandum of Law in Support [Adv. Pro. 14-08247, ECF

No. 2].

24.     On July 23, 2014, the Apollo Defendants similarly removed the

Intercreditor Action to this Court.  See Notice of Removal, Wilmington Trust, National

---

[7]        On July 25, 2014, the Apollo Defendants filed an amended Notice of Removal.

Association v. JPMorgan Chase Bank, N.A., No. 14-cv-05636 (S.D.N.Y. July 23, 2014) (Lewis Decl. at Ex. 3) (the "Notice of Removal" or "NOR") (the "Removed Intercreditor Action" and, together with the Removed First Lien Complaint, the "Removed Actions"). The Removed Actions were docketed with this Court as adversary proceeding numbers 14-08247 and 14-08248.

## ARGUMENT

### I. THE APOLLO DEFENDANTS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT THE COURT HAS SUBJECT MATTER JURISDICTION TO HEAR THE INTERCREDITOR ACTION

25. Bankruptcy courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); see also Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Constr., Inc.), 496 B.R. 106, 115 (S.D.N.Y. 2013) ("'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

26. As the party seeking removal of the Intercreditor Action, the Apollo Defendants have the burden of demonstrating that this Court has jurisdiction over the case. See e.g., Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) ("It is . . . hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

27. The Supreme Court has directed federal courts "to construe removal statutes strictly and resolve doubts in favor of remand." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 220 (2d Cir. 2013) (citations omitted); see also Healy v. Ratta, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state government, which should actuate

federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

28.     As demonstrated below, the Apollo Defendants cannot meet their burden of establishing that this Court has subject matter jurisdiction over the Intercreditor Action.

**A.     The Intercreditor Action Does Not "Arise Under" Title 11**

29.     In the Notice of Removal, the Apollo Defendants have not alleged that the Intercreditor Action "arises under" title 11, nor could they.  A case "arises under" title 11 if it "invoke[s] substantive rights created by bankruptcy law."  Glinka v. Fed. Plastics Mfg. (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 70 (2d Cir. 2002).  Here, the sole source of remedy is New York state contract law, not the Bankruptcy Code.  Accordingly, the Intercreditor Action does not "arise under" title 11.

**B.     The Intercreditor Action Does Not "Arise In" a Proceeding Under Title 11**

30.     Generally, an action "arises in" a bankruptcy proceeding where it is "'not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy.'"  Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).  The Apollo Defendants assert that, "[w]hile general disputes over the appropriate interpretation of an intercreditor agreement can arise outside of a bankruptcy action, the claims at issue in the Intercreditor Action could not, as they relate to issues — such as the appropriate distributions under a plan of reorganization — that are essential to the Chapter 11 Cases, and can arise only in the context of a bankruptcy case."  NOR ¶ 15.  However, the fact that this dispute could arise outside of a bankruptcy is dispositive in establishing that it does not "arise in" the Chapter 11 Cases.

31.     Indeed, the sole case relied upon by the Apollo Defendants refutes their contention that this Court has "arising in" jurisdiction over the Intercreditor Action.  See NOR ¶ 15 (citing Winstar Holdings, LLC v. Blackstone Grp., L.P., 2007 U.S. Dist. LEXIS 90482, at *3 (S.D.N.Y. Dec. 10, 2007)).  In Winstar, the district court held that "arising in" subject matter jurisdiction existed over a purchaser's common-law misrepresentation claims brought against the debtor's court-approved estate professionals, including the debtor's financial and restructuring advisors. Id. at *2-3.  The Winstar court explained that the "no existence outside of bankruptcy" formulation for finding "arising in" jurisdiction over state-law claims refers to "proceedings that by their nature cannot exist outside of bankruptcy, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy proceeding."  Id. at *10-12 (citing examples such as "motions for contempt of bankruptcy court orders, motions to change the composition of a creditors' committee or appoint or elect trustees or examiners").  Accordingly, the court in Winstar found "arising in" jurisdiction over the "garden-variety common-law" fraud claims, not because of when they arose, but because they concerned estate fiduciaries' conduct in a bankruptcy case. Id. at *11-12.

32.     Here, the Apollo Defendants admit that lawsuits over intercreditor agreements can exist outside of the context of bankruptcy proceedings.  NOR ¶ 15.  Indeed, this dispute could just as easily have arisen in other contexts, for example, in an out-of-court restructuring.  As a result, the Apollo Defendants' only argument is that this Court has "arising in" jurisdiction over the state-law claims by the happenstance of the bankruptcy filing.  This argument was rejected squarely by the Winstar court upon which the Apollo Defendants rely.  2007 U.S. Dist. LEXIS 90482, at *12 ("The mere fact that the cause of action would never have arisen absent this particular bankruptcy is not enough to confer jurisdiction."); see also Geruschat

v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 260 (3d Cir. 2007) ("[C]laims that 'arise in' a bankruptcy case are claims that *by their nature, not their particular factual circumstance*, could only arise in the context of a bankruptcy case." (emphasis added; citations omitted)).

33.     The logical extension of the Apollo Defendants' argument would transform every third-party, non-debtor dispute arising from prepetition contractual arrangements into a federal matter so long as the dispute ripened during a bankruptcy case or the issues underlying those disputes overlapped with plan issues.  The Apollo Defendants cannot establish federal court jurisdiction in this fashion, especially where the Supreme Court has instructed courts to construe federal court jurisdiction statutes narrowly.  See Healy, 292 U.S. at 270 (federal courts should "confine their own jurisdiction to the precise limits which the statute has defined").  Accordingly, the Apollo Defendants have not and cannot meet their burden of demonstrating that the Intercreditor Action "arises in" the Chapter 11 Cases.

**C.     The Intercreditor Action Does Not "Relate to" a Proceeding Under Title 11**

34.     Similarly, the Apollo Defendants are unable to demonstrate that the Intercreditor Action "relates to" a proceeding under title 11.  An action is "related to" a proceeding under title 11 if "the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  However, "a bankruptcy court's 'related to' jurisdiction cannot be limitless."  Id. at 308 (citations omitted).  Courts interpreting the Celotex standard have held that "related to" jurisdiction exists if an action could have a "conceivable effect" upon the bankruptcy estate.  See Pfizer, Inc. v. Law Offices of

Peter G. Angelos (In re Quigley Co.), 676 F.3d 45, 53-54 (2d Cir. 2012); cert. denied, 133 S. Ct. 2849 (2013).  This test recognizes that "any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." Sealink Funding Ltd. v. Bear Stearns & Co., 2012 U.S. Dist. LEXIS 145418, at *8 (S.D.N.Y. Oct. 9, 2012).

35.     As demonstrated below, the Intercreditor Action does not alter the Debtors' rights, liabilities, options or freedom of action, nor need it impact the handling and administration of the Chapter 11 Cases.  The Debtors' and State Court Defendants' postpetition attempt to create the "conceivable effect" that did not otherwise exist should be rejected.

i.     The Intercreditor Action Does Not Impact the Rights, Liabilities, Options or Freedom of Action of the Debtors, Nor Does it Impact Upon the Handling and Administration of the Chapter 11 Cases

36.     The relief sought in the Intercreditor Action concerns solely the actions and liability of the RSA Parties and does not impact the Debtors or their Chapter 11 Cases.  Indeed, nothing in the Intercreditor Action prevents the Debtors from moving forward with confirmation, consummating the Proposed Plan, making distributions thereunder, or reorganizing and exiting from chapter 11.  The relief fashioned in the Intercreditor Action will be assessed against the RSA Parties or their agents, and thus will not interfere with the Debtors' or their Chapter 11 Cases.  At the hearing on confirmation, this Court will determine whether the Debtors' proposed distribution of assets meets the standards of section 1129 of the Bankruptcy Code.  Resolution of that issue is wholly independent from whether the RSA Parties breached their contractual arrangements under the Intercreditor Agreement with the Senior Lenders.  Thus, the Intercreditor Action does not alter the Debtors' rights, liabilities, options or freedom of action, nor need it impact upon the handling and administration of the Chapter 11 Cases.

19289094

37.     The Apollo Defendants assert that the Intercreditor Action "relates to" the Chapter 11 Cases, because "[t]he issues that must be adjudicated in the Intercreditor Action **overlap** with those that will be resolved in connection with the Bankruptcy Court's adjudication of the Plan and the Optional Redemption Litigation, and the resolution of these issues will have a direct impact on distributions to be made to the Debtors' various creditors under the Plan." NOR ¶ 13 (emphasis added). Whether issues "overlap," however, is not a basis for subject matter jurisdiction. See Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353 B.R. 51, 60 (Bankr. S.D.N.Y. 2006) ("It is not sufficient, however, that the putative 'related to' proceeding and controversy involving the bankruptcy estate have common issues of fact to confer subject matter jurisdiction. Judicial economy itself does not justify federal jurisdiction." (citing Pacor, 743 F.2d at 994)); see also Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 753-54 (5th Cir. 1995) ("Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit." (citations omitted)). Thus, a federal court does not have jurisdiction over state-law claims simply because they "overlap" with issues currently before it.

38.     Accordingly, the Intercreditor Action will not alter the Debtors' rights, liabilities, options or freedom of action and need not impact the handling and administration of the Chapter 11 Cases.

ii.     The BCA Indemnification Cannot
        Serve as a Basis for "Related to" Jurisdiction

39.     Unable to demonstrate that the Intercreditor Action itself will impact the Debtors or their Chapter 11 Cases, the Apollo Defendants have attempted to manufacture jurisdiction in this Court by means of a postpetition indemnification. Yet, the Apollo Defendants

cannot rely on the postpetition BCA Indemnification as a basis for federal subject matter jurisdiction for two reasons:  (i) the indemnification at issue does not meet the Second Circuit's requirements to support a finding of "related to" jurisdiction; and (ii) a postpetition indemnification agreement cannot serve as a basis for bankruptcy court jurisdiction where there is no underlying substantive basis for indemnification.

> a.    *The BCA Indemnification Does Not Meet the*
>       *Standards for "Related to" Jurisdiction in the Second Circuit*

40.    The Second Circuit's "conceivable effect" test is based on the decision by the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984).  "The test articulated in <u>Pacor</u> for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit."  <u>In re Federal-Mogul Global, Inc.</u>, 300 F.3d 368, 382 (3d Cir. 2002); <u>see</u> <u>e.g.</u>, <u>W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)</u>, 591 F.3d 164, 173 (3d Cir. 2009) ("[O]ur recently reaffirmed precedent dictates that a bankruptcy court lacks subject matter jurisdiction over a third-party action if the only way in which that third-party action could have an impact on the debtor's estate is through the intervention of yet another lawsuit."); <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 190, 227, 231-32 (3d Cir. 2004) (holding that "related to" jurisdiction did not exist based on contribution claims that would require the intervention of another lawsuit).

41.    The Second Circuit has expressly endorsed and applied this "separate lawsuit" test in the context of contingent claims for indemnity.  <u>See</u> <u>Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)</u>, 676 F.3d 45, 53-54 (2d Cir. 2012).  In <u>Quigley</u>, a non-debtor and the estate shared a number of insurance policies and were joint beneficiaries of an insurance trust.  <u>Id.</u> at 47.  The estate and the non-debtor could each utilize the policies and the

trust on a "first billed, first paid basis" to satisfy settlements, judgments, or defense costs related to certain claims.  Id.  The Second Circuit, upholding the bankruptcy court's jurisdiction to enjoin a lawsuit against the non-debtor, explained that "related to" jurisdiction existed because the non-debtor and the debtor shared the same, finite insurance trust from which claims against each of them would be paid.  Id. at 53-54.  Rather than requiring an additional lawsuit to enforce the indemnity, the non-debtor had a "now-existent legal right to utilize" assets of the estate "to satisfy judgments or settlements or pay defense costs."  Id. at 54 (citations omitted).

42.     Here, there is no "now-existent legal right to utilize" assets of the estate.  First, the 1.5 Lien Indenture Trustee would have to prevail on its claims against the BCA Parties in the Intercreditor Action.  Second, the BCA Parties would have to prevail in a subsequent claim against the Debtors based on whatever indemnification obligations they contend are owed.  Indeed, the BCA sets forth a procedure for BCA Parties to assert indemnity claims against the Debtors.  See BCA § 8.2.  Further, the BCA Indemnification contains a carve-out for bad faith, willful misconduct or gross negligence on the part of the BCA Parties, in addition to any losses caused by a "Commitment Party Default."  See BCA § 8.2.  Accordingly, the carve-out identifies circumstances under which the Debtors would have defenses against a claim for indemnity by the BCA Parties.  Thus, unlike the defendant in Quigley, the BCA Parties do not have a "now-existent legal right" to utilize property of the estate.  Quigley, 676 F.3d at 54.  As a result, the potential impact of the 1.5 Lien Indenture Trustee's suit is "too attenuated" to confer subject matter jurisdiction over the purely state-law claims and does not have a "conceivable effect" on the Debtors or their Chapter 11 Cases.  Id.[8]

---

[8]        The two cases on which Apollo relies were decided well before Quigley and apply the incorrect legal standard because they assume that the existence of an indemnification obligation alone is a basis for jurisdiction.  See Blackacre Bridge Capitol LLC v. Korff (In re River Ctr. Holdings, LLC), 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003) (finding "even if [an asserted indemnification] obligation is not contractual

> b.   *The Apollo Defendants Cannot Manufacture "Related to"*
>      *Jurisdiction by Means of the BCA Indemnification*

43.     In an apparent concession that the Intercreditor Action would not otherwise "relate to" the Chapter 11 Cases, the Apollo Defendants have attempted to manufacture jurisdiction in this Court by belatedly entering into an indemnification agreement with the Debtors specifically targeting lawsuits like the Intercreditor Action. This transparent attempt to manufacture jurisdiction should be rejected. As courts have "made clear, subject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." Combustion Eng'g, 391 F.3d at 228-29 (citations and quotations omitted); Greene v. Nationwide Mut. Ins. Co., 2011 U.S. Dist. LEXIS 6514, at *7 (N.D. W. Va. Jan. 21, 2011) (explaining that a "defendant cannot manufacture federal jurisdiction by a document of its own making."); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 761 (11th Cir. 2010) ("The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case into a removable one. Thus a defendant cannot show that a previously non-removable case has become removable as a result of a document created by the defendant." (citations and quotations omitted)).

44.     Specifically, in the bankruptcy context, courts have held that parties cannot use postpetition agreements — such as a debtor's agreement to indemnify a third-party — as a basis for demonstrating a "conceivable effect" for purposes of "related to" jurisdiction. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 756 (5th Cir. 1995) (holding that

---

and absolute, 'related to' jurisdiction exists" if there is a "reasonable legal basis" for an indemnification); Bond St. Assocs. LTD. v. Ames Dep't Stores, Inc., 174 B.R. 28, 32-33 (S.D.N.Y. 1994) (finding "related to" jurisdiction based on the conclusion that "§ 1334(b), taken as a whole, constitutes an extraordinarily broad grant of jurisdiction to the Article III District Court" which "covers virtually all litigation in which a debtor or the estate could be expected to have an interest").

indemnification agreement in connection with settlement agreement entered into postpetition could not serve as the basis for bankruptcy court jurisdiction over claims alleging a creditor's misconduct where no other basis for indemnification existed); see also Combustion Eng'g, 391 F.3d at 228 (debtor cannot "create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions"); In re Dreier LLP, 429 B.R. 112, 131 (Bankr. S.D.N.Y. 2010) ("A bankruptcy court does not acquire subject matter jurisdiction 'to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate.'") (quoting Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 517 F.3d 52, 65 (2d Cir. 2008), rev'd and remanded on other grounds sub nom. Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (U.S. 2009)); In re Genco Shipping & Trading Ltd., 2014 Bankr. LEXIS 2854, at *106-07 (Bankr. S.D.N.Y. July 2, 2014) (refusing to permit third-party releases based on "indemnification obligations that arose out of the [restructuring support agreement] or plan negotiations [because] [t]he Debtors and the Released Parties should not be able to create indemnification obligations simply to gain the protection of a third party release").

      45.    The decision of the Court of Appeals for the Fifth Circuit in Zale is particularly instructive.  In Zale, 62 F.3d at 756-57, after filing for bankruptcy, three of the debtor's former directors and CIGNA, the debtor's primary liability insurer, entered into a settlement agreement with the debtor that resolved potential claims held by the debtor against the directors.  The settlement agreement provided that the directors agreed to stipulate to facts that would form the basis of a judgment against them in the amount of $32 million.  Id. at 749. CIGNA, which had provided primary insurance coverage for the debtor's directors and officers for up to $10 million, agreed to pay up to the policy limit to the debtor.  Id.  Another insurance

provider, National Union Fire Insurance Company ("NUFIC"), had issued to the debtor an excess director and officer policy for up to $15 million, which would be triggered after the CIGNA policy limit was reached.  Id.  Accordingly, the judgment provided for in the settlement would trigger NUFIC's liability to third parties under its excess policy.  Id.

46.     Just prior to the hearing for approval of the settlement, the settling parties amended the settlement to include (i) a permanent injunction protecting the settling parties from any lawsuits in connection with entering into the settlement and (ii) an indemnification provision under which the debtor agreed to indemnify CIGNA for bad faith and other claims concerning CIGNA's entry into the settlement.  Id. at 749-50.  The stated purpose of this provision was to prevent NUFIC from pursuing claims against CIGNA for entering into the settlement with the debtor.  Id. at 750.  Prior to the hearing on the settlement, NUFIC had filed a declaratory judgment action in district court to preserve coverage-related issues and to obtain a release from its obligations if the settlement closed.  Id. at 749 n.5.  At the hearing on the proposed settlement, NUFIC and a fourth director of the debtor who was excluded from the settlement objected, arguing, *inter alia*, that the bankruptcy court lacked jurisdiction to enjoin their claims against CIGNA.  Id. at 750.  The bankruptcy court approved the settlement, including the indemnification and injunction, over the objections of NUFIC and the fourth director, and the district court affirmed.  Id. at 750-51.

47.     On appeal, the Court of Appeals for the Fifth Circuit reversed the decision of the bankruptcy court, finding that it lacked subject matter jurisdiction over the third-parties' tort claims against CIGNA, and thus could not enjoin these claims.  Id. at 756-57.  Applying the "conceivable effect" standard, the Fifth Circuit found that the tort claims against CIGNA, a non-debtor, "d[id] not relate to the bankruptcy because the claims [were] not property of the estate

and they have no effect on the estate." Id. at 755. The Fifth Circuit rejected CIGNA's contention that the tort claims would affect the estate because the debtor had agreed to indemnify it for any such claims. Id. at 756. The Fifth Circuit reasoned that the tort claims involved a creditor's behavior and the only relation of those claims to the estate rested upon the debtor's agreement to indemnify CIGNA for claims that the non-debtors could not bring against the debtor. Id. In considering "whether . . . [debtor's] consent to the indemnification provision in the settlement can establish bankruptcy jurisdiction over unrelated third-party claims," the Fifth Circuit held that it could not. Id. The court reasoned:

> Absent the indemnification agreement, CIGNA has no independent claim against [the debtor] for indemnification because it is **CIGNA's** actions, not **[the debtor's]**, that are at issue. Consequently, the question is whether, alone, [debtor's] consent to the indemnification provision in the settlement can establish bankruptcy court jurisdiction over the unrelated third-party claims . . .

> Because CIGNA, Feld, and NUFIC **are not debtors** and because the property at issue – the bad faith claims – **is not property of the estate**, the bankruptcy court would have no jurisdiction over the tort claims **absent the indemnification provision in the settlement**. Moreover, the tort claims **do not implicate an independent obligation of [debtor] in favor of CIGNA. Once we look past the indemnification agreement, no substantive basis for indemnification exists.** For these reasons, the settlement cannot provide the basis for jurisdiction over the bad faith claims. Accordingly, CIGNA and [debtor's] attempt to establish jurisdiction fails, and the bankruptcy court had no jurisdiction over Feld's and NUFIC's tort actions against CIGNA.

Id. at 756-57 (emphasis added; internal citations and quotations omitted).

48.     Here, the Apollo Defendants cannot manufacture federal court jurisdiction over the Intercreditor Action through the BCA Indemnification. Just as in Zale, the Debtors do not have any obligation, independent of the BCA Indemnification, to indemnify the BCA Parties. Also as in Zale, but for the Debtors' self-infliction of a postpetition indemnification obligation to

their present and future owners in the BCA, the BCA Parties would not be entitled to assert any claim against the Debtors for their liability to the Senior Lenders. In addition, the Intercreditor Action has no relation to the estate other than the postpetition indemnification: the Intercreditor Action alleges no misconduct by the Debtors and the outcome of the Intercreditor Action does not affect property of the estate. As a result, the Debtors cannot use a postpetition indemnification as a basis for asserting that there is subject matter jurisdiction.

49.     Accordingly, the BCA Indemnification cannot serve as a basis for this Court's jurisdiction over the 1.5 Lien Indenture Trustee's breach of contract claims against the State Court Defendants. Thus, the Apollo Defendants cannot demonstrate that the Intercreditor Action will have a "conceivable effect" upon the Debtors or their Chapter 11 Cases.

## II.     28 U.S.C. § 1334(c)(2) REQUIRES THE COURT TO ABSTAIN FROM EXERCISING ANY "RELATED TO" JURISDICTION TO THE EXTENT SUCH JURISDICTION EXISTS

50.     Even if the Court determines that there is "related to" bankruptcy jurisdiction over this action, 28 U.S.C. § 1334(c)(2) requires that the Court abstain and remand this case to the State Court. Section 1334(c)(2) requires mandatory abstention if:

> (i) the motion was timely brought;
>
> (ii) the action is based on state-law claims;
>
> (iii) the action does not arise under title 11 or arise in a case under title 11;
>
> (iv) section 1334 is the sole basis for federal jurisdiction;
>
> (v) an action was commenced in state court; and
>
> (vi) the action can be "timely adjudicated" in state court.

28 U.S.C. § 1334(c)(2); see e.g., Baker v. Simpson, 613 F.3d 346, 350 (2d Cir. 2010); In re Fairfield Sentry Ltd., 458 B.R. 665, 689 (S.D.N.Y. 2011) (citations omitted).

51.     It is indisputable that the Intercreditor Action satisfies the following criteria for mandatory abstention: (1) the Motion was brought promptly after the Apollo

Defendants filed the Notice of Removal; (2) the Intercreditor Action is based entirely on New York contract law; (3) the Apollo Defendants do not invoke any basis for federal jurisdiction other than section 1334; and (4) the Intercreditor Action was commenced in the State Court. With respect to whether the action "arises under" title 11 or "arises in" the Chapter 11 Cases, it does not for the reasons set forth in Part I.A & B, *supra*.

52. That leaves only whether the Intercreditor Action can be "timely adjudicated" in the State Court. 28 U.S.C. § 1334(c)(2). The Court of Appeals for the Second Circuit has explained that the following four factors should be weighed in evaluating timeliness for purposes of section 1334(c)(2): "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state-law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 266 (2d Cir. 2011).

53. The first factor considers the relative dockets of the federal and state forums. The "question is not whether the action would be more quickly adjudicated in [the bankruptcy court] than in state court, but rather, whether the action can be timely adjudicated in the state court." Id. at 266 (quoting In re Exide Techs., 544 F.3d 196, 218 n.14 (3d Cir. 2008)). As the party challenging abstention, the Apollo Defendants must show, through "actual evidence" that "the backlog of cases is significantly different" in the two tribunals. N.Y. Commercial Bank v. Pullo, 2013 Bankr. LEXIS 520, at *14-15 (Bankr. S.D.N.Y. Feb. 7, 2013) (citing Post Investors LLC v. Gribble, 2012 U.S. Dist. LEXIS 139783, at *14 (S.D.N.Y. Sept. 27, 2012)).

54.     The Apollo Defendants cannot meet this burden because they have not demonstrated any disparity between the backlog of cases of this Court and the State Court.  More fundamentally, however, there is a significant question as to whether this Court may enter a final order with respect to the Intercreditor Action.  See 28 U.S.C. § 157(c)(1) (bankruptcy courts may not enter final judgments with respect claims statutorily defined as "non-core"); Exec. Benefits Ins. Agency v. Arkison, — U.S. —, 2014 U.S. LEXIS 3993, at *9-10 (June 9, 2014) (holding that with respect to a "claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter" "the proper course is to issue proposed findings of fact and conclusions of law" to be submitted to the district court for de novo review entry of judgment).  Thus, remanding the action to State Court as opposed to hearing it in this Court, "provides a more direct route for the parties to obtain a final adjudication on the merits," and the first timeliness factor favors abstention.  Pullo, 2013 Bankr. LEXIS 520, at *16.

55.     The second timeliness factor considers "the complexity of the issues presented and the respective expertise of each forum."  Parmalat, 671 F.3d at 266.  This case raises issues concerning the proper interpretation of an intercreditor agreement, which is a common and important instrument in complex debt financing.  The Commercial Divisions specialize in precisely this type of litigation.  See 2 Robert L. Haig, Commercial Litig. in N.Y. State Courts § 1.6-1.7 (3d ed. 2010) (the Commercial Division's "enormous growth clearly reflects the commercial bar's and the business sector's confidence in the quality of the Commercial Division and its ability to handle complex commercial disputes with expertise and efficiency.").  Accordingly, there can be no question that the Commercial Division is a proper forum to adjudicate the Intercreditor Action.

19289094

56.	The final two timeliness factors are "the status of the title 11 bankruptcy proceeding to which the state law claims are related" and "whether the state court proceeding would prolong the administration or liquidation of the estate."  Parmalat, 671 F.3d at 266.  These factors should resolve in favor of remand, because the Intercreditor Action can be resolved after the Chapter 11 Cases conclude and, for the reasons stated above, need have no effect on the administration of the estate.

57.	In sum, even if the Court were to find that it has "related to" subject matter jurisdiction, the Intercreditor Action is nevertheless subject to mandatory abstention under 28 U.S.C. § 1334(c)(2).

## III.	THE COURT SHOULD EXERCISE PERMISSIVE ABSTENTION AND EQUITABLE REMAND

58.	Finally, even if the Court finds subject matter jurisdiction under section 1334 exists and that abstention is not mandatory, the interests of justice and comity nevertheless strongly favor that the Court exercise its discretion to abstain and remand the case to the State Court.  28 U.S.C. § 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).  Similarly, 28 U.S.C. § 1452(b) authorizes remand on "any equitable ground."  28 U.S.C. § 1452(b).  Permissive abstention and equitable remand are within the discretion of the federal court.  Longacre Master Fund, Ltd. v. Telecheck Servs. (In re Casual Male Corp.), 317 B.R. 472, 477 (Bankr. S.D.N.Y. 2004).

59.	In considering whether permissive abstention or equitable remand are appropriate, "courts have considered one or more (not necessarily all) of twelve factors."  Hart v.

<u>Bello</u>, 2011 U.S. Dist. LEXIS 45471, at *12-13 (S.D.N.Y. Apr. 27, 2011) (citations omitted).

The twelve factors routinely cited by courts are:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

<u>Id.</u> at *13-14 n.5. Consideration of these factors points towards the propriety of this Court's abstention and remand to the State Court.

60.     As already discussed, (i) remand would not delay or in any way affect the administration of the Debtors' cases (in fact it will likely facilitate case administration, as described below)[factor (1)], (ii) this action asserts exclusively state-law claims [factor (2)]; (iii) there is no basis for federal court jurisdiction other than section 1334 [factor (5)]; (iv) this action involves no core matters and is not related to the Chapter 11 Cases [factors (6) and (7)]; and (v) this action involves only non-debtors [factor (12)].

61.     Finally, the efficient administration of the Chapter 11 Cases favors remand, because where there are questions regarding a bankruptcy court's authority to enter a final order, abstention facilitates resolution of the action. <u>See</u> <u>In re Bearing Point, Inc.</u>, 453 B.R. 486, 488 (Bankr. S.D.N.Y. 2011) (granting litigation trustee relief from confirmation order because of "considerably greater risk that [state-law claims] would be materially slowed by

motion practice premised on [the court's] lack of constitutional authority to enter a final judgment"). Thus, the Court should exercise its discretion to abstain from deciding the Intercreditor Action and remand the case to the State Court — an indisputably proper forum of appropriate jurisdiction to hear and finally decide the state-law causes of action underlying the Intercreditor Action.

## CONCLUSION

62. For the reasons set forth above, the 1.5 Lien Indenture Trustee respectfully requests that this Court grant the Motion and remand this proceeding to the State Court.

Dated: New York, New York
August 1, 2014

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:     /s/ Steven J. Reisman
        Steven J. Reisman
        Michael J. Moscato
        Theresa A. Foudy
        101 Park Avenue
        New York, New York 10178-0061
        Tel:  (212) 696-6000
        Fax:  (212) 697-1559
        Email:  sreisman@curtis.com
                mmoscato@curtis.com
                tfoudy@curtis.com

        *Counsel for Wilmington Trust,*
         *National Association, as Trustee*

19289094